UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-60299-ALTMAN/Hunt

**DANIEL SULLY,** *et al.*,

     *Plaintiffs*,

*v.*

**SCOTTSDALE INSURANCE CO.,**

     *Defendant.*

_____/

**<u>ORDER</u>**

     This is an insurance dispute in which the Plaintiffs (the insureds) sued the Defendant (the insurer) in state court, advancing one claim under Florida's Declaratory Judgment Act. The Plaintiffs, who allege that they suffered a loss that's covered by their homeowner's policy, sent the Defendant notice of their claim. But (they say) the Defendant refused, over the course of the next six months, either to adjust their claim or else to deny it outright. Because the policy required the Defendant to adjust the loss within a "reasonable time," this six-month delay (the Plaintiffs maintain) amounted to a denial. The Plaintiffs, therefore, asked the state court to declare *both* that their loss was covered *and* that the Defendant had a duty to adjust their claim.

     After the Defendant removed the case, the Plaintiffs asked for a remand, arguing that they lack Article III standing to seek declaratory relief. We agree. Although the Plaintiffs ask only for *prospective* relief, they have alleged no *future* injury. And so, after careful review, we grant the Plaintiffs' motion and remand this case to state court.

## THE FACTS[1]

The Plaintiffs, Daniel Sully and Cynthia Dauphin, took out a homeowner's insurance policy from the Defendant, Scottsdale Insurance Company. *See* Petition for Declaratory Relief ("Complaint") [ECF No. 1-1] ¶¶ 1–5. While the policy was in effect, the Plaintiffs suffered a loss at their home—specifically, water damage from a plumbing leak. *See id.* ¶¶ 4–6. On July 8, 2020, the Plaintiffs gave the Defendant notice of the loss, and the Defendant assigned them a claim number. *Id.* ¶ 8. But, as of January 10, 2021—when the Plaintiffs filed this Complaint—the Defendant still hadn't contacted the Plaintiffs about the claim. *See id.* ¶¶ 7–9. According to the Plaintiffs, the Defendant "has neither acknowledged coverage nor denied coverage in writing, and has apparently taken the position that it has no specific time or duty within which it is to perform its obligation to adjust the loss." *Id.* ¶ 12. As the Plaintiffs see it, the Defendant had an obligation under the policy to adjust the loss "promptly and within reasonable time after notification[.]" *Id.* ¶ 13. The Defendant's "unreasonable delay" was "tantamount to a denial of coverage for the loss." *Id.*

Although the Plaintiffs "believe[d]" the loss was covered, they were ultimately "in doubt" or "uncertain as to the existence or non-existence of [their] rights to coverage under the policy[.]" *Id.* ¶ 20. Thus, they needed "a declaration of rights by the court." *Id.* They therefore invoked the Florida Declaratory Judgment Act, § 86.011 *et seq.*, and asked for a declaration that (1) "there has been a covered loss under the policy," and (2) the Defendant "has an affirmative duty to perform its obligation to adjust the loss." *Id.* at 5. They also sought fees and costs under FLA. STAT. § 627.428. *Id.*

## PROCEDURAL HISTORY

The Defendant removed, *see* Notice of Removal [ECF No. 1], and the Plaintiffs moved to remand, *see* Motion to Remand ("Motion") [ECF No. 8]. The Motion is now ripe for adjudication. *See*

---

[1] We take these "facts," as we must, from the allegations of the Complaint.

Respondent's Response to Petitioners' Motion for Remand and Incorporated Memorandum of Law ("Response") [ECF No. 20]; Petitioners' Reply to Respondent's Response to Petitioners' Motion to Remand ("Reply") [ECF No. 22]; Scottsdale Insurance Company's Sur-Reply To Petitioners' Reply to Respondent's Response to Petitioners' Motion to Remand ("Sur-Reply") [ECF No. 26].

The Plaintiffs agree that the parties are completely diverse—*see generally* Motion; Reply—and they concede that the amount in controversy is greater than $75,000, *see* Reply. They argue only that (1) the Court must construe their claim for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and that (2) they lack Article III standing to pursue *declaratory* relief because they haven't shown any likelihood of *future* injury. *See* Motion at 7–10; *id.* at 10 (contending that the Complaint is "devoid of any indication of future injury" because the Plaintiffs don't allege, for example, "that they will continue to incur future harm as a result of the [Defendant's] failure to provide them with a coverage determination").

The Defendant agrees that this Court should evaluate the Florida Declaratory Judgment Act claim under the auspices of the Federal Declaratory Judgment Act. *See* Response ¶ 23; *see also Trans-Am. Imp. & Exp. Corp. v. Colony Ins. Co.*, 2010 WL 11610316, at *2 n.3 (S.D. Fla. Aug. 26, 2010) ("Florida's Declaratory Judgment Act is merely a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts. Because the case has been removed to federal court, the claim is properly analyzed under the federal Declaratory Judgment Act, 28 U.S.C. § 2201."). But (in a bizarre role reversal) the Defendant maintains that, for two reasons, the Plaintiffs *do* have Article III standing. First, the Defendant says, the Plaintiffs allege that "there is an actual bona-fide controversy." Response ¶ 25 (quoting Complaint ¶ 28). Second, the Defendant points out, the Plaintiffs don't aver that the Defendant "has *actually denied* the underlying claim for benefits." Sur-Reply ¶ 5. And so, the Defendant says, "the threat of future denial remains." *Id.* ¶ 5; *see also id.* ¶ 6

3

(arguing that the Complaint is "forward-looking" and that a "[p]otential denial remains a looming threat of injury").

## THE LAW

"In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" as it appears in the Declaratory Judgment Act refers to the types of cases and controversies that are justiciable under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1251 (11th Cir. 2019) (explaining that the Declaratory Judgment Act doesn't "enlarge the jurisdiction of the federal courts" and reaffirming that declaratory relief is subject to the "case or controversy" requirement of Article III).

In other words, when a plaintiff sues under the Declaratory Judgment Act, "the threshold question is whether a justiciable controversy exists[.]" *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (cleaned up). To establish a justiciable Article III "case or controversy," a plaintiff must "show, among other things, that he has suffered an injury in fact—some harm to a legal interest that is actual or imminent, not conjectural or hypothetical." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000) (cleaned up). That is, he must allege facts "from which it appears there is a substantial likelihood that he will suffer injury in the future." *Id.* at 1340. "The remote possibility that a future injury may happen is not sufficient to satisfy the actual controversy requirement for declaratory judgments." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (cleaned up). Conversely, an "[i]njury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Id.* at 1348. A declaration regarding a past injury is "nothing more than a gratuitous comment without

4

any force or effect." *Id.* (quoting *N. Va. Women's Med. Ctr. v. Balch*, 617 F.2d 1045, 1049 (4th Cir. 1980)).

To satisfy Article III's requirements, moreover, the requested declaratory judgment must "redress [an] alleged harm"—or, put another way, "completely resolve [the] case." *Sundy v. Friendship Pavilion Acquisition Co., LLC*, 807 F. App'x 977, 982–83 (11th Cir. 2020). If the judgment would "only resolve a collateral issue," such that the plaintiff "would still have to return to state court, where he might (or might not) be able to use the declaratory judgment in support of a new suit seeking monetary damages," then the plaintiff lacks Article III standing. *Id.*; *see also Calderon v. Ashmus*, 523 U.S. 740, 746–47 (1998) (holding that a request under the Declaratory Judgment Act for what was, in effect, "an advance ruling" on a collateral issue—rather than a "conclusive determination" of the underlying controversy—did not constitute an Article III "case or controversy").

When the Court lacks subject-matter jurisdiction over a case that has been removed from state court, the proper disposition is a remand. *See* 28 U.S.C. § 1447(c) (providing that, for a case that has been removed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"); *see also Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) ("[T]he literal words of § 1447(c) . . . give no discretion to dismiss rather than remand an action." (cleaned up)); *McGee v. Solic. Gen. of Richmond Cnty.*, 727 F.3d 1322, 1326 (11th Cir. 2013) (vacating dismissal order where the district court lacked jurisdiction over a removed case and instructing the district court to remand).

## ANALYSIS

This is a peculiar case. To begin with, the Plaintiffs have pled all the elements of a breach of contract—without, however, asking for money damages. They allege that (1) they have a valid insurance policy with the Defendant, *see* Compl. ¶¶ 1–5; (2) they suffered a covered loss while the policy was extant, *id.* ¶¶ 4–6; (3) they provided notice of the loss to the Defendant, *id.* ¶ 8; (4) their

notice triggered the Defendant's duty to adjust the loss in a reasonably timely manner, *id.* ¶ 13; and (5) the Defendant's delay operated as a denial of the claim under the policy, *id.* In other words, had the Plaintiffs alleged damages (*viz.*, monetary reimbursement for the loss), they would have made out a viable claim for breach of contract. *See Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017) ("To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages."). But the Plaintiffs *haven't* asked for damages. Instead, they seek only *prospective* relief. As a result, even if they were to prevail here, they'd still need to file a separate (though almost entirely duplicative) action in state court to obtain any monetary relief.[2] For this reason alone, the Plaintiffs lack standing. *See Ashmus*, 523 U.S. at 746–47.

Which brings us to the second peculiarity: The Plaintiffs, who request only *prospective* relief, have alleged only a *past* injury—specifically, the Defendant's (effective) denial of their claim. And an "[i]njury in the past," as we've said, "does not support a finding of an Article III case or controversy

---

[2]     The Plaintiffs suggest that, because they don't have a copy of the policy, they're not really sure about their rights or the scope of coverage. *See* Compl. ¶ 4 ("[The Plaintiffs] do[ ] not have a true and complete copy of the Policy, but Defendant has a true and correct copy of the Policy. Plaintiff[s] reserve[ ] the right to supplement this by attaching a copy of the Policy after same is provided by Defendant in response to discovery requests."); *id.* ¶ 13 (the Plaintiffs "*believe[ ]* that [the Defendant's] obligation to adjust the loss must be performed promptly and within reasonable time after notification" (emphasis added)); *id.* ¶ 18 ("[The Plaintiffs] *believe[ ]* there is no express language in the policy excluding damage to the insured building[.]" (emphasis added)); *id.* ¶ 20 ("Although [the Plaintiffs] *believe[ ]* that there has been a covered loss, [the Plaintiffs] [are] in doubt or are uncertain as to the existence or non-existence of [their] rights to coverage under the policy and [have] an actual, practical and present need for a declaration of rights by the court." (emphasis added)). And, while the Plaintiffs allege that the Defendant hasn't contacted them *about their claim*, *see id.* ¶ 12, they never suggest that they asked for (and were denied) a copy of their policy, or that they can't access their policy somewhere else (online, for example). *See generally* Compl.

       If that's what's really going on here—that the Plaintiffs filed their complaint in the hopes of seeing their policy and to have a court clarify their rights so that they can evaluate their legal options moving forward—then this case doesn't belong in federal court. Federal judges, after all, aren't in the business of issuing advisory opinions. *See, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("[N]o justiciable controversy is presented . . . when the parties are asking for an advisory opinion[.]"); *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.) ("[I]t was not for courts to pass upon . . . abstract, intellectual problems but only if a concrete, living contest between adversaries called for the arbitrament of law.").

when the only relief sought is a declaratory judgment." *Malowney*, 193 F.3d at 1348. The Plaintiffs (notably) don't allege any potential future injury—for example, that they might suffer some imminent *future* leak that would require them to resolve this dispute about the scope of their coverage. *See generally* Complaint.[3]

The Middle District of Florida recently addressed this second peculiarity in a case we find particularly instructive here. *See Norris v. Freedom Life Ins. Co. of Am.*, 2020 WL 887707 (M.D. Fla. Feb. 24, 2020). After the insurer denied Norris's claim for medical costs, Norris "request[ed] a declaratory judgment that [the defendant-insurer] [was] responsible for paying all medical bills and expenses rendered to [her]." *Id.* at *4. But she did not ask "the [c]ourt to award these amounts or any amounts resulting from alleged past harm." *Id.* The court, therefore, held that Norris's allegations were "devoid of any indication of future injury." *Id.* at *5. She had not alleged, for example, that she would "continue to incur medical bills and expenses, for which [the insurer] [would] refuse to provide coverage or payment." *Id.* Having thus concluded that Norris lacked Article III standing, the court remanded the case to state court. *Id.* ("[B]ecause [the defendant-insurer] removed the action from state court and the [c]ourt is without subject matter jurisdiction, the action is due to be remanded.").

The Defendant attempts to distinguish *Norris* by pointing out that, in that case, the insurer had issued an express, written denial of coverage. Here, by contrast (as the Defendant rightly notes), the insurer "has neither acknowledged coverage nor denied coverage in writing[.]" Sur-Reply ¶ 10. In saying so, however, the Defendant ignores the Plaintiffs' allegation that the "unreasonable delay" was "tantamount to a denial of coverage for the loss." Compl. ¶ 13. Because we are at the motion to dismiss stage, we must accept that allegation as true. *See West v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1289, 1296 (11th Cir. 2017) (explaining that, at the motion to dismiss stage, courts must "accept as

---

[3] We don't mean to suggest that those allegations would necessarily confer Article III standing. We simply note that, without any such allegation, the Complaint asserts only a past injury.

true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor"). We point this out because, although the Plaintiffs haven't appended the policy to the Complaint, *see generally* Compl., the Defendant has made no effort to rebut this allegation—by, for instance, attaching the policy and referring the Court to its relevant provisions, *see generally* Response; Sur-Reply; *cf. Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiffs claim; and (2) undisputed."); *Kuber v. Prudential Ins. Co. of Am.,* 2019 WL 7899139, at *3 (S.D. Fla. May 31, 2019) ("The Policy documents and insurance contract are central to Plaintiff's claims and undisputed, so the Court considers them for purposes of determining this Motion to Dismiss."). Assuming (as we must) that the Complaint's allegations are true, then the Complaint is entirely backward-looking.[4]

Even if we accept the Defendant's (mis)characterization of the Complaint, though, the Plaintiffs would still lack Article III standing. The Defendant's position is that it *might* still deny the claim in the future. *See* Sur-Reply ¶ 5 (insisting that the "the threat of future denial remains"). But the

---

[4] One could argue that we needn't accept this particular allegation as true because it's a legal conclusion—not an assertion of fact. Generally, it's true, questions of contract interpretation raise legal questions for the court to decide. *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent."). But we're not here talking about a contract provision that requires interpretation. The Plaintiffs have alleged that, as a matter of fact, the contract includes a provision that requires the Defendant to adjust the claim within a reasonable time—barring which the Defendant's silence operates as a denial. This is not so different from alleging that the contract required the Defendant, say, to ship a set of goods next Tuesday. Of course, it's possible that our insurance policy contains no such provision—just as it's possible that the provision the Plaintiffs rely on actually says something quite different or is subject to multiple (reasonable) constructions. But the Defendant never makes this argument—never attaches, in other words, the policy itself or otherwise suggests that the policy includes no such provision. The point, then, is that the Plaintiffs' assertion that the policy *does* include such a provision is an assertion of fact that the Defendant (for whatever reason) has chosen not to challenge—though it plainly had its chance to do so. Without such a challenge, the Court must accept that assertion of fact as true.

Complaint includes no such allegation. *See generally* Compl. Nor does it contain any assertions from which the Court might reasonably draw that inference. *Id.* According to the Plaintiffs, the parties haven't even spoken about the claim at all, *see* Compl. ¶ 10 (alleging that the Defendant "has not contacted nor corresponded with" the Plaintiffs since July of 2020), so there's really no way for us to divine what the Defendant might (or might not) do. The Defendant *may* send a written denial, sure. But, for all anyone knows, the Defendant may choose to adjust the loss and settle the claim tomorrow. The Defendant, therefore, does not (and cannot) suggest that a *denial* is imminent (or looming). It thus tellingly says only that a "*[p]otential denial* remains a looming threat of injury." Sur-Reply ¶ 6 (emphasis added). But that hypothetical possibility doesn't suffice to invest the Plaintiffs with Article III standing. *See, e.g.*, *Malowney*, 193 F.3d at 1347 (explaining that, for the plaintiff to have standing to seek declaratory relief, the plaintiff's injury "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury").

The Defendant cites three cases for its view that an insurer's "failure to act" in a timely manner establishes a justiciable "case or controversy." *See* Response ¶¶ 22–23 (citing *Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2007 WL 1424596 (S.D. Fla. May 14, 2007) (Moreno, J.); *Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307 (S.D. Fla. 2007) (Ryskamp, J.); and *Isola Condo. Ass'n v. QBE Ins. Corp.*, 2008 WL 5169458 (S.D. Fla. Sept. 24, 2008) (Graham, J.)). None is applicable here—again, even if were to assume (counterfactually) that the Complaint seeks redress for a future harm.

In *Quadomain*, the plaintiff was a condominium association that suffered wind and water damage to its property during a hurricane. *See* 2007 WL 1424596, at *1. The insurer had "inspected the damages," but it hadn't settled the claim because the parties disagreed about the extent of those damages. *Id.* The plaintiff sued the insurer for (1) a declaratory judgment under the Florida Declaratory Judgment Act, (2) breach of contract, (3) breach of warranty, and (4) a violation of a Florida statute.

*Id.* Although the defendant-insurer moved to dismiss the declaratory-judgment claim, it didn't premise its arguments on *either* the Declaratory Judgment Act *or* Article III—and so, neither was mentioned in the court's order. *See generally id.* Instead, the court resolved the motion on a separate question: whether the plaintiff had pled the elements of a declaratory-judgment claim under *Florida* law. *See id.* at *3 ("[I]n order to support a claim for declaratory judgment under [FLA. STAT.] section 86.021, a party must allege the following elements . . . ."). For that reason, the case—and its progeny—have nothing to say about the Plaintiffs' Article III standing here. *Cf. In re Bradford*, 830 F.3d 1273, 1278 (11th Cir. 2016) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." (quoting *Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974)).[5]

In the second case, *Townhouses of Highland Beach*, the court denied the defendant's motion for reconsideration of the court's prior order denying the motion to dismiss. *See* 504 F. Supp. 2d at 1312. In the court's view, the plaintiff had pled a viable claim under the Declaratory Judgment Act. *Id.* Interestingly, in its motion to dismiss, the defendant had argued *only* that the plaintiff "failed to plead a claim for declaratory judgment due to its failure to 'cite the statutory basis for such an invocation of jurisdiction.'" *Id.* (quoting the defendant's motion to dismiss). But, in its motion for reconsideration, the defendant raised "an entirely different legal theory"—namely, that "there [was] no case or controversy[.]" *Id.* (quoting the defendant's motion for reconsideration). And, as relevant here, in

---

[5] We note, too, that the elements of a Florida Declaratory Judgment Act claim are different than the requirements of Article III standing. *Compare Quadomain*, 2007 WL 1424596, at *3 (explaining that a Florida Declaratory Judgment Act claim requires "(1) a bona fide adverse interest between the parties concerning a power, privilege, immunity or right of the plaintiff[,] (2) the plaintiff's doubt about the existence or non-existence of [his] rights or privileges; and (3) that he is entitled to have the doubt removed." (quoting *Floyd v. Guardian Life Ins. Co.*, 415 So. 2d 103, 104 (Fla. 3d DCA 1982))), *with Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." (cleaned up)).

adjudicating the motion for reconsideration, the court (wrongly, in our view[6]) chose not to address this new argument. *See id.* ("This argument was obviously available to Defendant at the time it filed its Motion to Dismiss, as it raised the same argument in other suits dealing with similar issues. Since Defendant did not raise this argument in its Motion to Dismiss, the argument has been waived and Defendant may not raise it in a motion for reconsideration." (cleaned up)). Since this second case—like the first—didn't address the only question presented here, it's of no help to us, either.

In the third case, *Isola Condominium*, the court held that the plaintiff had pled a viable claim under the Declaratory Judgment Act because there remained two bona fide disputes between the parties. *See* 2008 WL 5169458, at *7. First, the complaint alleged that the parties disagreed about whether the relevant insurance policy was in full force and effect when the hurricane struck South Florida. *Id.* Second, the parties hotly disputed whether, if the policy did remain in effect, its hurricane deductible was valid and enforceable. *Id.* This case is obviously inapplicable on these two points. Whether a policy *continues* to be in effect and whether a material provision of that policy is null and void are precisely the kinds of forward-looking questions that a declaratory judgment is meant to resolve. *See Penn Mut. Life Ins. Co. v. Wolk*, 739 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (finding an actual controversy regarding a "potentially-void" life insurance policy and holding that a declaratory judgment "would (1) serve a useful purpose in clarifying or settling whether the Policy is valid, and (2) finalize the controversy and thus offer relief from uncertainty upon the disability, injury, or decease of [the insured]"). Here, by contrast, the Plaintiffs don't allege any similar dispute about whether the policy has lapsed or whether one of its central provisions is void. *See generally* Complaint. *Isola Condominium* is, therefore, inapposite here.

---

[6] *See Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) ("Questions of subject matter jurisdiction may be raised at any time.").

It's true that, in *Isola Condominium*, the court went on to say that the plaintiff had pled a viable declaratory-judgment claim because it alleged that the insurer "has yet to promptly investigate, pay and/or settle the claim." *Isola Condominium*, 2008 WL 5169458, at *7. In saying so, however, the court was assuming that the insurer had not yet denied the plaintiff's claim. Here, by contrast—as we've said—the Plaintiffs specifically allege that the Defendant has *already* denied their claim. This distinction is, of course, dispositive here because it vitiates the Defendant's argument that the Plaintiffs might be subject to some further, future harm. In any event, this aspect of *Isola Condominium* relied on *Quadomain* and *Townhouses of Highland Beach*. *See id.* But, as we've seen, neither case had anything to say about Article III—and so, *Isola Condominium* isn't persuasive on this question in any event.

Finally, we quickly dispose of the Defendant's argument that our case presents a live controversy simply because the Plaintiffs allege that "there is an actual bona-fide controversy." Response ¶ 25 (quoting Complaint ¶ 28). It's black-letter law that "parties may not stipulate to federal jurisdiction." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269–70 (11th Cir. 2013); *see also AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359–60 (11th Cir. 2007) (explaining that courts "are obliged to consider standing *sua sponte* even if the parties have not raised the issue"); *Hall v. Sargeant*, 2020 WL 1536435, at *3 (S.D. Fla. Mar. 30, 2020) (Altman, J.) (explaining that it is "the Court's responsibility to 'zealously insure that jurisdiction exists over a case.'" (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001))). The Plaintiffs, in other words, cannot create a case or controversy by deploying in their Complaint certain magic words.

\*\*\*

We turn, then, to the Plaintiffs' request for attorneys' fees. *See* Motion at 11. The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for awarding fees under the statute turns on the reasonableness of the removal: "Absent

unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Bentley v. Miami Air Int'l, Inc.*, 377 F. Supp. 3d 1337, 1344 (S.D. Fla. 2019) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

In our view, there *was* an objectively reasonable basis for removal. The Defendant removed the case under this Court's diversity jurisdiction, *see generally* Notice of Removal—a basis for jurisdiction the Plaintiffs ultimately didn't contest, *see generally* Motion; Reply. The Plaintiffs never hinted at their own Article III problem until they filed this Motion, and we don't think the (otherwise vague and peculiar) Complaint raised this issue clearly—at least not so clearly as to render the removal unreasonable. We also note that the Plaintiffs failed to comply with Local Rule 7.1(a)(3). *See* Motion (excluding the required certification of conferral). Although the Court, in its discretion, opted to adjudicate the Motion anyway—*see Nanotech Ent., Inc. v. R&T Sports Mktg., Inc.*, 2014 WL 12611203, at *4 (S.D. Fla. Sept. 24, 2014) (the plaintiff's "failure to comply with Rule 7.1(a)(3) of the Court's Local Rules does not justify denial of its request for remand"); *Hernandez v. Ticketmaster, LLC*, 2018 WL 2198457, at *4 (S.D. Fla. May 14, 2018) ("Despite the failure by plaintiff's counsel to comply with Local Rule 7.1(a)(3), the Court will exercise its discretion and consider the merits of the instant motion.")—the failure to comply with our Local Rules is, we think, another basis for denying the Plaintiffs' request for fees, *see Williams v. Ocean Title Co.*, 2007 WL 1805792, at *1 (S.D. Fla. June 22, 2007) (the failure to comply with Local Rule 7.1 "is sufficient cause for the denial of the motion as well as imposition of an appropriate sanction").

Having carefully reviewed the record and the governing law, the Court hereby **ORDERS and ADJUDGES** as follows:

1. The Motion [ECF No. 8] is **GRANTED in part**—except for the Plaintiffs' request for attorneys' fees.

2. The case is **REMANDED** to the Seventeenth Judicial Circuit in and for Broward County, Florida.

3. The Clerk shall **CLOSE** this case. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 6th day of April 2021.

                                    _____

                                    **ROY K. ALTMAN**
                                    **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record